**Nos. 22-1631, -1632, -1633, -1634, -1635, -1636, -1637, -1638**

IN THE

# United States Court of Appeals

## FOR THE FEDERAL CIRCUIT

_____

MASIMO CORPORATION,

*Appellant,*

v.

APPLE INC.,

*Appellee.*

_____

APPEAL FROM THE PATENT TRIAL AND APPEAL BOARD
CASE NOS. IPR2020-01520, IPR2020-01521, IPR2020-01536, IPR2020-01537,
IPR2020-01538, IPR2020-01539, IPR2020-01714, IPR2020-01715

_____

**REPLY BRIEF OF APPELLANT MASIMO CORPORATION**

_____

Joseph R. Re, *Principal Counsel*
Stephen C. Jensen
Jarom D. Kesler
Stephen W. Larson
**KNOBBE, MARTENS, OLSON &**
**BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

Jeremiah S. Helm
**KNOBBE, MARTENS, OLSON &**
**BEAR, LLP**
1717 Pennsylvania Ave., N.W.
Washington, D.C. 20006
(202) 640-6400

*Attorneys for Appellant*
*Masimo Corporation*

November 9, 2022

# <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellant Masimo Corporation certifies the following:

1.     The full name of every party represented by me is:

Masimo Corporation.

2.     The name of the real party-in-interest represented by me is:

Masimo Corporation.

3.     All parent corporations and any publicly held companies that own more than 10 percent or more of the stock of the party represented by me are:

Blackrock Inc.

4.     The name of all law firms and the partners or associates that appeared for the party in the lower tribunal or are expected to appear for the party in this court and who are not listed on the docket for the current case:

Knobbe, Martens, Olson & Bear, LLP: William R. Zimmerman and Jacob L. Peterson.

5.     The case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

- *Masimo Corporation v. Apple Inc.*, U.S. Court of Appeals for the Federal Circuit, Case No. 22-1972 (consolidated with Case Nos. 22-1973, 22-1975, 22-1976)

- *Masimo Corporation v. Apple Inc.*, U.S. Court of Appeals for the Federal Circuit, Case No. 22-2069 (consolidated with Case Nos. 22-2070, 22-2071, 22-2072)

- *Masimo Corporation and Cercacor Laboratories, Inc. v. Apple Inc.*, U.S. District Court for the Central District of California, Case No. 8:20-cv-00048-JVS

6.   Information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):

Not applicable.

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ......................................................... 1

II.    ARGUMENT................................................................ 2

    A.     The Board Made Multiple Errors In IPR1520/1521 That
        Require Reversal Or Remand............................................. 2

        1.     The Board Erred By Rewriting Inokawa .................................. 2

        2.     The Board Erred By Failing To Consider Apple's
            Admissions.......................................................... 4

        3.     The Board Allowed Apple To Adopt New
            Contradictory Positions............................................. 7

        4.     The Board's Adoption Of The "Greatest
            Curvature" Theory Is Unsupported By Substantial
            Evidence ........................................................... 10

        5.     The Board Erred By Not Addressing Ohsaki's
            Disclosure That Its Protrusion Has A "Tendency
            To Slip Off" Aizawa's Palm-Side Measurement
            Location ........................................................... 14

        6.     The Board Erred By Adopting Its Own Theory For
            The First Time In Its Final Decisions .................................. 16

    B.     The  Board Also Erred In IPR1520/1521 In Finding That
        A POSITA Would Have Added A Second LED To
        Aizawa's Sensor..................................................... 18

    C.     The Board's Holding In IPR1520 That Dependent Claims
        12 And 14 Are Obvious Lacks Substantial Evidence ...................... 20

    D.     The Board Made Multiple Errors In IPR1537/1539/1715
        That Require Reversal Or Remand ...................................... 23

-i-

# TABLE OF CONTENTS
### (*cont'd*)

E.  The Board Also Erred In IPR1537/1539/1715 When Finding A POSITA Would Replace Aizawa's Wireless Transmitter With A Base Station Only To Add Back Wireless Transmission ....................................................................... 24

F.  The Board Made Multiple Errors In IPR1536/1538/1714 That Require Reversal Or Remand ..................................................... 25

    1.  The Board Erred In Failing To Reconcile Its Decisions With Over A Dozen Warnings In Mendelson-799 Against Applying Pressure ........................... 25

    2.  The Board Also Erred In Failing To Identify A Structure That Would Eliminate Air Gaps ............................ 27

    3.  The Board's "Protection" Motivation Lacks Substantial Evidence ................................................................. 27

G.  The Board's Holding In IPR1538/1539/1714/1715 That Masimo's Claimed Protrusion Height Ranges Would Have Been Obvious Is Unsupported By Substantial Evidence ....................................................................................... 29

H.  The Board Erred In Finding A Reasonable Expectation Of Success ....................................................................................... 30

I.  Apple Agrees This Court Should Reverse The Board's Holding As To Certain Dependent Claims Of The '554 Patent ............................................................................................. 33

III.  CONCLUSION ............................................................................... 33

CERTIFICATE OF COMPLIANCE ....................................................... 36

# <u>TABLE OF AUTHORITIES</u>

**Page No(s).**

*Almirall, LLC v. Amneal Pharms. LLC,*
  28 F.4th 265 (Fed. Cir. 2022) ........................................................... 24

*Applications in Internet Time, LLC v. RPX Corp.,*
  897 F.3d 1336 (Fed. Cir. 2018) ........................................................... 7

*Aqua Prods. v. Matal,*
  872 F.3d 1290, 1325 (Fed. Cir. 2017) ................................................. 7

*BASF Corp. v. Enthone, Inc.,*
  749 F. App'x 978 (Fed. Cir. 2018) ..................................................... 32

*Chemours Co. v. Daikin Indus.,*
  4 F.4th 1370 (Fed. Cir. 2021) ....................................................... 1, 25

*Cook Grp. v. Bos. Sci. Scimed, Inc.,*
  809 F. App'x 990 (Fed. Cir. 2020) ...................................................... 7

*Cutsforth, Inc. v. MotivePower, Inc.,*
  636 F. App'x 575 (Fed. Cir. 2016) ..................................................... 13

*DSS Tech. Mgmt., Inc. v. Apple Inc.,*
  885 F.3d 1367 (Fed. Cir. 2018) ..................................................... 1, 19

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.,*
  800 F.3d 1375(Fed. Cir. 2015) ......................................................... 22

*In re Epstein,*
  32 F.3d 1559 (Fed. Cir. 1994) .......................................................... 31

*Hawknet, Ltd. v. Overseas Shipping Agencies,*
  590 F.3d 87 (2d Cir. 2009) ............................................................... 23

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.,*
  688 F.3d 1342 (Fed. Cir. 2012) ................................... 16, 18, 19, 24

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No.**

*In re Lee*,
   277 F.3d 1338 (Fed. Cir. 2002) .................................................... 6, 26

*In re Magnum Oil Tools Int'l, Ltd.*,
   829 F.3d 1364 (Fed. Cir. 2016) ......................................................... 17

*Novartis AG v. Torrent Pharms. Ltd.*,
   853 F.3d 1316 (Fed. Cir. 2017) ................................................... 22, 25

*Osi Pharms., LLC v. Apotex, Inc.*,
   939 F.3d 1375 (Fed. Cir. 2019) ........................................................... 4

*Personal Web Techs., LLC v. Apple Inc.*,
   848 F.3d 987 (Fed. Cir. 2017) .................................................... 27, 31

*Polaris Indus. v. Arctic Cat, Inc.*,
   882 F.3d 1056 (Fed. Cir. 2018) ........................................................ 25

*PPC Broadband, Inc. v. Iancu*,
   739 F. App'x 615, 622 (Fed. Cir. 2018) ............................................ 7

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
   944 F.3d 1344 (Fed. Cir. 2019 ......................................................... 23

*In re Qapsule Technologies, Inc.*,
   759 Fed. Appx. 975 (Fed. Cir. 2019) ............................................... 23

*TQ Delta, LLC v. Cisco Sys., Inc.*,
   942 F.3d 1352 (Fed. Cir. 2019) ......................................................... 1

*In re Urbanski*,
   809 F.3d 1237 (Fed. Cir. 2016) ........................................................ 20

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page No.**

# OTHER AUTHORITIES

35 U.S.C. § 282 ................................................................... 22

35 U.S.C. § 312 ................................................................... 22

35 U.S.C. § 316 ................................................................... 22

# I. **INTRODUCTION**

Apple repeatedly invokes the substantial-evidence standard, but does so to obscure the Board's numerous mistakes. The substantial-evidence standard is not an express lane to judicial affirmance. This Court does not hesitate to reverse or remand where, as here, the Board makes findings that are unsupported or the result of error. *See, e.g., Chemours Co. v. Daikin Indus.*, 4 F.4th 1370, 1376 (Fed. Cir. 2021); *TQ Delta, LLC v. Cisco Sys., Inc.,* 942 F.3d 1352, 1362 (Fed. Cir. 2019); *DSS Tech. Mgmt., Inc. v. Apple Inc.*, 885 F.3d 1367, 1377 (Fed. Cir. 2018).

Contrary to Apple's arguments, Masimo does not ask this Court to "reconsider countless of the Board's fact-bound findings." Resp. 3. Masimo pointed to specific errors that independently support reversal or at least remand. The Board rewrote the prior art, ignored numerous Apple admissions, ignored key portions of the prior art that support patentability, and adopted new and erroneous theories in its decisions. As a result, the Board's findings are unsupported by, and contrary to, the evidence. No prior art discloses or suggests Masimo's innovative approach. This Court should reverse or at least remand.

## II. **ARGUMENT**

### A. **The Board Made Multiple Errors In IPR1520/1521 That Require Reversal Or Remand**

#### 1. **The Board Erred By Rewriting Inokawa**

Apple restates the Board's findings, but makes little effort to defend the Board errors identified by Masimo. The Board rewrote Inokawa as if it said the lens increases "the light-gathering ability of Inokawa's light ***detector***." *See* Appx00053-00054 (excerpting Appx03278 ¶[0015]); Appx00160.[1] But Inokawa actually says its lens may "increase the light-gathering ability of the ***LED*** [i.e., light emitting diode]," Appx03278 ¶[0015], not any detector.

Apple argues the Board was entitled to rely on "the context of Inokawa as a whole." Resp. 38-39. But Apple identifies no context to justify rewriting Inokawa. Indeed, the remainder of the very sentence at issue supports the clear distinction between Inokawa's LED and detector. The sentence states that the lens makes it possible to "increase the light-gathering ability of the LED as well as to protect the LED ***or PD*** [i.e., photodiode detector]." Appx03278 ¶[0015].

Inokawa repeats the "light-gathering ability of the LED" sentence above. Appx03278 ¶[0015]; Appx03280 ¶[0030]. In each instance, the sentence is preceded by a sentence explaining "a lens is provided on the surface of the sensor-side light-

---

[1] All emphasis is added unless otherwise noted.

emitting means." *Id*. Inokawa's "light-emitting means" is a light emitting diode, not a detector. Appx03282 ¶[0058]. Inokawa distinguishes between its LED, which emits light, and its photodiode, which "receives the reflected light." *Id*.

Apple points to fifteen paragraphs of its expert's reply declaration. Resp. 39. None of those paragraphs addresses the sentence at issue in Inokawa. In his opening declaration, Apple's expert repeatedly quoted and relied upon the sentence without ever suggesting it meant the lens increases the "light-gathering ability" of the ***detector***. *See, e.g.*, Appx03029 ¶61; Appx3053 ¶96; Appx3055 ¶98; Appx3102 ¶174. At his deposition, Apple's expert testified "Inokawa teaches that the lens makes it possible to increase the light-gathering ability of the ***LED*** …." Appx05319 25:15-17.

The Board acknowledged Inokawa's sentence "refers to the 'LED'" rather than a "detector." Appx00053. The Board attempted to justify departing from that plain language, however, by finding it "undisputed that detector 25 is the only component of Inokawa's sensor 1 that gathers light." *Id*. But no party asserted that Inokawa's detector was the only component that gathers light. Indeed, Apple's own expert testified to the contrary. Appx05319 25:15-17 ("Inokawa teaches that the lens makes it possible to increase the light-gathering ability ***of the LED*** ….").

Thus, the Board erred in rewriting Inokawa. A POSITA would not have interpreted Inokawa's sentence as stating its lens would increase the light-gathering

ability of its detector. Invalidity cannot stand where, as here, "the Board misinterpreted the asserted references to teach more than substantial evidence supports." *Osi Pharms., LLC v. Apotex, Inc.*, 939 F.3d 1375, 1382-83 (Fed. Cir. 2019).

### 2.    The Board Erred By Failing To Consider Apple's Admissions

The Board also relied on Inokawa's Figure 2 to find Inokawa would have motivated a POSITA to add a convex surface to Aizawa or Mendelson-1988 to increase light collection. *See e.g.*, Appx00055-00056; Appx00162.



**Inokawa Fig. 2 (color added) (Appx03290)**

Inokawa's Figure 2 (above) illustrates a sensor with a central detector surrounded by peripheral LEDs. Br. 29. In contrast, Aizawa and Mendelson-1988 disclose a sensor with the opposite configuration: a central LED surrounded by peripheral detectors. Br. 29. Apple's expert rejected a broad interpretation of Inokawa as teaching a light-concentration benefit for different emitter-detector configurations:

> I think one of ordinary skill in the art would understand that in Inokawa the objective is to concentrate light at the

***detector***, which is in the ***center axis*** of the drawing and that the lens is capable of providing that benefit. If we're going to ***move the lenses and the LEDs and detectors around*** and ask different questions, it's – ***it isn't so obvious*** that Inokawa is specifically considering those scenarios. It's a little more hypothetical.

Appx05380-05381 86:19-87:6. The Board erred in ignoring this admission.

The Board also failed to address Apple and its expert's numerous admissions that a POSITA would believe a convex surface condenses light ***centrally***. Br. 30-32. Apple and its expert asserted: (1) "the incoming light is 'condensed' toward the center," (2) the combination's convex surface would result in "more light in the center than at the outer edge," and (3) "that's because light's being directed towards the center and away from the edge…." *Id*. (collecting cites).

Apple's expert even illustrated that a convex cover (below right) redirects light centrally compared to a flat cover (below left):



**Apple's Illustrations of Light-Redirection (Appx01922)**

Apple's expert explained that the above-right illustration shows "the incoming light is 'condensed' toward the center." Appx03068-03069 ¶119.

Apple claims the "Board understood that [Apple's expert] acknowledged that 'a convex lens would generally direct more light to the center[.]'" Resp. 46. But Apple quotes a section of the Board's decision summarizing the parties' contentions, not the Board's "Analysis and Conclusion." *Id*. (quoting Appx00042 rather than Appx00051-00063). Apple also tellingly crops the quotation. The full quotation reveals that the Board noted Masimo's objection to one of Apple's expert's new theories on reply. Appx00042 ("Patent Owner also objects to Dr. Kenny's testimony that, 'while a convex lens would generally direct more light to the center,' it 'would also capture some light that otherwise would not be captured' by Aizawa's detectors 22[.]").

Apple also attempts to harmonize its various optical theories. Resp. 46. But Apple never shows ***the Board*** attempted to reconcile those theories. "[C]ourts may not accept … counsel's post hoc rationalization for agency action." *In re Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002). The Board picked Apple's "greatest curvature" theory and discarded the rest, including Apple's original position that a convex surface condenses light centrally. Br. 34. Apple's attempt to reconcile its theories also fails. A lens cannot provide an "improvement in the light concentration at pretty much ***all*** of the locations under the curvature of the lens," as Apple asserts. Resp. 46. That is not "concentration" at all, and is inconsistent with Apple's original position that the convex surface concentrates light centrally. Apple also never

explains how a lens can simultaneously (1) "concentrate" light centrally and (2) "concentrate" light everywhere.

The Board's failure to address Apple's admissions and reconcile them with the Board's decisions justifies reversal or remand. *See Cook Grp. v. Bos. Sci. Scimed, Inc.,* 809 F. App'x 990, 999 (Fed. Cir. 2020) (nonprecedential) ("The Board erred in refusing to consider [petitioner's] admission[s] when it was weighing the evidence…."); *PPC Broadband, Inc. v. Iancu,* 739 F. App'x 615, 622-23 (Fed. Cir. 2018) (nonprecedential) (vacating obviousness where Board failed to address expert's admissions). "The Board's selective weighing of the record evidence does not pass muster under the APA. Just as it may not short-cut its legal analysis, the Board may not short-cut its consideration of the factual record before it." *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1353 (Fed. Cir. 2018). "[A]n agency's refusal to consider evidence bearing on the issue before it is, by definition, arbitrary and capricious…." *Aqua Prods. v. Matal*, 872 F.3d 1290, 1325-26 (Fed. Cir. 2017).

### 3. <u>The Board Allowed Apple To Adopt New Contradictory Positions</u>

Apple claims its "greatest curvature" theory merely "elaborated" on Apple's original position that a POSITA would have added a convex surface "to increase light-gathering." Resp. 41. But Apple's petitions asserted a specific theory: that a convex surface would concentrate light toward the sensor's ***center,*** just like

Inokawa's lens. *See, e.g.*, Appx01897-01898; Appx06973-06974. After Masimo identified the flaw in Apple's combinations, Apple and its expert asserted new theories to try to explain ***away*** Apple's original position. Br. 33-34.

Indeed, overwhelming record evidence demonstrates Apple's change of position. First, Apple's petitions focused on the specific teaching of Inokawa. *See, e.g.*, Appx01897; Appx01921-23. Apple asserted a POSITA would have incorporated an "Inokawa-like lens" because the "lens of Inokawa" would "precisely" provide the benefit of increased light collection by "refracting/concentrating" the incoming signals centrally. *Id*. Apple's expert testified a POSITA would understand that "in Inokawa the objective is to concentrate light at the detector, which is in the ***center*** axis of the drawing and that the lens is capable of providing ***that*** benefit." Appx05380-05381 86:19-87:6.

On reply, however, Apple asserted a POSITA would instead place the convex surface's "greatest curvature" "near" peripherally located detectors. Br. 33-34. The Board accepted Apple's argument that a POSITA would apply (1) this purported "***general*** concept of optics," Resp. 43, and (2) "Inokawa's ***general*** teaching of increasing light collection using a convex lens to Aizawa," *id*. 47. The Board found a POSITA would (3) "modif[y]" Inokawa's lens, "accounting for the placement of Aizawa's sensors [*sic* detectors]" by "placing the curvature in the same regions." *Id*. 45-46. Apple thus changed its position from (1) arguing a POSITA would

incorporate a "Inokawa-like lens" providing the "precise" benefit of "refracting/concentrating" light centrally to (2) arguing a POSITA would adopt a "general" teaching of Inokawa and optics and "modify" Inokawa's lens to place a "greatest curvature" at a particular location around the sensor's periphery.

Second, Apple's petitions explained and illustrated a convex surface condensing/concentrating light centrally. *See, e.g.*, Appx01897-01898. For example, '265 patent claims 12 and 14 require a reduced "mean" path length of light. To address these claims, Apple's expert explained and illustrated with arrows how light ***overall*** would be refracted such that the "***mean***" path length would be reduced. Appx03068-03069 ¶119. Apple jettisoned this theory on reply and argued its expert had merely illustrated "the path length of an ***individual ray*** of light." Resp. 50-51.

Third, Apple's petition combinations included lens shapes that resulted from Apple's arguments about manufacturability. Appx00056-00057; *see also* Appx00162-00164. Apple argued a POSITA could mold Aizawa's epoxy into a lens shape. Appx001899; Appx01953. As support, Apple illustrated Nishikawa, a non-ground reference disclosing an LED structure for emitting light. *Id.* Apple's expert admitted, and the Board acknowledged, that the specific curvature of the lens in Apple's combinations was "borrowed" from Nishikawa as shown below. Br. 35.

 

**Aizawa-Inokawa Combination (annotated to highlight alleged "greatest curvature") (Appx00054)**

**Apple's Expert's Illustration of Nishikawa's LED (highlight added, rotated) (Appx03056-03057 ¶99)**

On reply, however, Apple argued a POSITA would place the "greatest curvature" "near" the detectors. Br. 33-34. The Board adopted that "greatest curvature" theory, ascribing remarkable geometric precision to Apple's illustrations. Appx00053-00055; Appx00160-00162. The Board did so even though Apple's expert characterized those illustrations as "cartoons" lacking geometric precision. Br. 34 (collecting cites).

The Board erred in adopting Apple's new positions, which contradicted Apple's original positions.

### 4. The Board's Adoption Of The "Greatest Curvature" Theory Is Unsupported By Substantial Evidence

The Board's "greatest curvature" theory is unsupported by substantial evidence. First, Apple makes no attempt to show its "greatest curvature" theory is disclosed by the cited art. No such disclosure exists. Apple instead argues the theory would be known by anyone with a "high school" education. Resp. 42. But neither Apple nor its expert cited this purported well-known "high school" theory in

connection with the petitions. Nor would that theory have been understood by a POSITA, particularly under Apple's defined level of skill in the art, which requires no coursework or training in optics. Indeed, Apple failed to identify a single treatise, textbook, or publication mentioning that theory, much less evidencing the theory would be known by a high-school student. Br. 42-43. If anything, a POSITA would understand that a convex lens directs light centrally, as repeatedly argued by Apple, as Apple's expert originally stated and testified, and as illustrated in Masimo's patents:



**Masimo's Patent Fig. 14B (annotated to show direction of light) (Appx00719)**

Second, Apple fails to reconcile its "greatest curvature" theory with its illustrations. Apple does not dispute its illustrations show the combination's "greatest curvature" is well ***beyond*** Aizawa's narrow detector cavities (red):



**Aizawa-Inokawa Combination**
**(annotated to highlight alleged "greatest curvature") (Appx00054)**

Apple also ignores its other petitions, which illustrate different lens shapes with remarkably different "greatest curvatures," despite arguing all combinations would improve light collection. Br. 34-35.

Apple argues the Board's analysis "did not depend" on identifying the "greatest curvature" in Apple's illustrations. Resp. 47-48. That is incorrect. The Board relied on magnified versions of Apple's illustrations to show the "greatest curvature" "near" the detectors. Appx00053-00055; Appx00160-00162. The Board claimed the specific curvature would lead to improved light collection. *Id*.

Third, the Board's emphasis on precise curvature contradicts Apple's expert's testimony referring to Apple's illustrations as "cartoons" that provide insufficient precision to determine any impact on light concentration. Br. 34. Apple makes no attempt to reconcile the Board's precision with Apple's expert testimony that the illustrations are mere cartoons.

Fourth, the Board never explained why a POSITA applying the "greatest curvature" theory would arrive at the claimed *single* protrusion over multiple peripheral detectors in a physiological sensor. *Id*. 37. Apple argues the Board need

not show the prior art would lead a POSITA to the "optimal" configuration.  Resp. 44.  But Masimo does not argue Apple was required to identify the "optimal" configuration.  The Board's combinations do not place the "greatest curvature" "near" a detector and accordingly do not even embody the "greatest curvature" theory.  If anything, the "greatest curvature" theory would lead a POSITA to place a separate protrusion over each detector, as shown in the prior art addressed in the examiner's reasons for allowance.  Br. 38.  "Merely stating that a particular placement of an element is a design choice does not make it obvious.  The Board must offer a reason for why a person of ordinary skill in the art would have made the specific design choice." *Cutsforth, Inc. v. MotivePower, Inc.*, 636 F. App'x 575, 578 (Fed. Cir. 2016) (nonprecedential).

Apple argues the Board found a POSITA would seek to adopt Aizawa's approach and place a single cover over Aizawa's multiple detectors.  Br. 43-44.  As support, however, Apple points to the Board's statement that a POSITA would seek to apply *Inokawa's* lens to Aizawa, contrasting that with Aizawa's "existing flat cover."  Resp. 43-44 (citing Appx00054-00055); Appx00054-00055 (POSITA would apply approach "similar" to Inokawa "versus Aizawa's existing cover").  Like the prior art addressed in the examiner's reasons for allowance, the Inokawa figure relied on by the Board places a protrusion over a *single* detector, not multiple detectors.  Br. 38; Appx00053-00055; Appx00160-00162.

5.    **The Board Erred By Not Addressing Ohsaki's Disclosure That Its Protrusion Has A "Tendency To Slip Off" Aizawa's Palm-Side Measurement Location**

In IPR1520/1521, the Board also found Ohsaki would have motivated a POSITA to add a convex surface to Aizawa's sensor to improve "adhesion." Br. 43-44. Even if such a motivation existed, however, a POSITA would not have created Apple's combination, which directs light *away* from the sensor's detectors. Regardless, in finding a motivation to combine based on "adhesion," the Board erred by failing to address Ohsaki's disclosure that its convex surface has a "tendency to *slip off*" at Aizawa's palm-side location. *Id*. 46-47. Apple identifies nothing in the Board's decisions addressing this critical disclosure. "[T]he Board may not short-cut its consideration of the factual record before it." *RPX*, 897 F.3d at 1353.

Apple claims the Board "accounted" for Ohsaki's "tendency to slip off" disclosure through the Board's discussion of Ohsaki's Figures 3A-3B. Resp. 33. But the Board's discussion of those figures confirms the Board failed to consider Ohsaki's "tendency to slip off" disclosure. The Board found a POSITA would interpret Figures 3A-3B as disclosing a convex surface would provide some benefit whether on the palm-side or backhand side. Appx00071-00072; Appx00171-00172; Br. 47. But that is not how Ohsaki describes those figures. Ohsaki explains that its convex surface "has a tendency to slip off" on the palm-side of the user's wrist and uses Figures 3A-3B to *explain* the negative effects of that slippage. Appx03356

-14-

¶[0023].  The Board failed to consider Ohsaki's "tendency to slip off" disclosure and thus misinterpreted Figures 3A-3B.

Rather than consider Ohsaki's "tendency to slip off" disclosure in paragraph 23, the Board broadly interpreted Ohsaki's paragraph 25 as supporting that a convex surface would provide increased adhesion compared to a flat surface.  Appx00070-Appx00071; Appx00173-00174.    But Ohsaki's paragraph 25 compares the performance of a convex surface to a flat surface on the wrist's ***watch side***, as shown in Figures 4A-4B.  Appx00071-00072; Appx00171-00172; Appx03356 ¶[0025]; Appx05245-05246 ¶93.  Nothing in Ohsaki teaches that its convex surface provided any adhesion benefit over a flat surface at any ***other*** location.

Apple argues Ohsaki's "tendency to slip off" disclosure is irrelevant because Apple's obviousness theory was not limited to Aizawa's palm-side location.  Resp. 32.  But Masimo pointed to Apple's own arguments demonstrating that Apple's obviousness theory was directed to a palm-side combination.  Br. 49, 66-67.  Moreover, regardless of Apple's self-serving descriptions of its combinations, Apple's combinations modify Aizawa's sensor, which monitors arteries accessible on the wrist's ***palm-side***.  *Id.*

Apple also points to the Board's finding that the combinations would at least "work" and "provide some benefit 'if the user is at rest.'"  Resp. 32-33 (emphasis removed).  But the Board's motivation to combine was based on Ohsaki's disclosure

that its convex surface may perform better than a flat surface in ***motion***. Appx00070-00072 (citing Appx03356 ¶[0025] (if board has "flat surface," pulse wave is "adversely affected" by "movement")); Appx00171-00172. Nothing in Ohsaki suggests its convex surface provides any adhesion benefit when a user is at rest.

Apple argues the alleged improved adhesion from Ohsaki's convex surface would have also improved Aizawa's signal strength and detection efficiency. Resp. 36. As discussed, however, a POSITA would not have believed Ohsaki's convex surface would improve adhesion at Aizawa's palm-side location in the first place, much less provided any additional alleged benefits flowing from improved adhesion. Br. 63.

### 6.     <u>The Board Erred By Adopting Its Own Theory For The First Time In Its Final Decisions</u>

Even if Ohsaki could be interpreted as disclosing that its convex surface provides improves adhesion, Aizawa explains that its sensor already obtains increased "adhesion" with its ***flat*** surface. Br. 18. Where, as here, "each device independently operates effectively," a POSITA "would have no reason to combine the features of both devices into a single device." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1369 (Fed. Cir. 2012). Indeed, Aizawa is the only reference in Apple's combination that actually mentions "adhesion." Br. 63.

The Board discarded Aizawa's teaching that its flat cover provides improved adhesion. Br. 50-51. The Board instead adopted its own theory for the first time in

the final written decisions:  that "Aizawa's adhesion is provided by its *acrylic material* rather than the flat shape of its cover." *Id*. (citing Appx00072).  But the "Board must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond." *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016).

Apple argues the Board was free to raise this theory to reject Masimo's expert's testimony. Resp. 34.  But the Board's new "acrylic" theory rejected Apple's *own* expert's testimony.  *See* Br. 50-51 (collecting testimony).  Indeed, Apple has no response to its own expert's testimony that (1) Aizawa's "plate is described as a plate-like member.  It doesn't explicitly require the use of acrylic"; and (2) a POSITA would understand you can get Aizawa's benefit by using acrylic *or* "other" materials.  *Id*.  Aizawa's disclosure itself makes clear Aizawa's flat plate, not acrylic material, improves adhesion.  *Id*. (citing Appx03246 ¶[0013]).  The Board's new theory thus contradicted Aizawa's teachings and Apple's own expert's testimony.

For all the reasons above, this Court should reverse the Board's obviousness conclusions in IPR1520/1521.  The Board's findings would have a POSITA ignore (1) the straightforward understanding acknowledged by Apple and its expert that a convex lens condenses light centrally; (2) Inokawa's teaching that its lens directs light toward its center detector; (3) Ohsaki's teaching that its convex surface is prone

to slip off when placed on the palm side; and (4) Aizawa's teaching that a flat plate provides improved adhesion and detection efficiency at its palm-side location.

**B.    The Board Also Erred In IPR1520/1521 In Finding That A POSITA Would Have Added A Second LED To Aizawa's Sensor**

To address the separate claim requirement of two LEDs in IPR1520/1521, the Board found a POSITA would have been motivated to add a second LED to Aizawa's sensor. Appx00104-00105; Appx00195-00196. The Board's findings are erroneous and unsupported by substantial evidence. Br. 59.

The Board first reasoned a POSITA would have added a second LED to Aizawa's sensor to address the impact of body *motion* on measurements. Appx00022; Appx00135. But Apple does not dispute Aizawa already provides a "device for computing the amount of *motion* load from the pulse rate." Resp. 27 (citing Appx03246 ¶[0015]). There would have been no reason to combine the two approaches. *Kinetic Concepts,* 688 F.3d at 1369. Apple argues the Board found Inokawa's approach would be more reliable than Aizawa's approach. Resp. 27. But the Board cited nothing in Inokawa disclosing or suggesting that. Br. 60-61. The Board pointed to paragraph 77 of Apple's expert declaration, but Apple's expert never explained why Inokawa's approach would purportedly be superior to *Aizawa's* approach, much less why a person of ordinary skill would have thought that. *See* Appx03042-03043 ¶77. Indeed, Apple's expert's sole support for touting two LEDs was a non-combination reference (Nanba) that corrects motion "with only a *single*

-18-

light emitting element." Br. 60. Conclusory expert testimony citing contradictory evidence cannot establish obviousness. *See DSS Tech.*, 885 F.3d at 1376.

Apple points to the Board's finding that Apple's expert's testimony was purportedly "unrebutted" because Masimo's expert "set[] up a straw man to attack." Resp. 28. Not so. Masimo's expert responded to Apple's expert's testimony. *See, e.g.*, Appx05240 ¶84. Apple's expert never explained why Inokawa's approach for handling motion would purportedly be superior to Aizawa's approach. *See* Appx03042-03043 ¶77.

The Board also found a POSITA would have added a second LED to adopt Inokawa's cumbersome base-station approach to optical data communication. Appx00032-00033; Appx00137-00138. As the Board acknowledged, however, Aizawa's sensor already includes ***wireless*** transmission for data communication. *Id*. No evidence explained why a POSITA would have combined or replaced Aizawa's elegant wireless transmission with Inokawa's cumbersome base-station approach. Br. 60-61. *See Kinetic Concepts*, 688 F.3d at 1369. Apple claims Masimo assumes a POSITA would "bodily incorporate" Inokawa's cumbersome base-station approach. Resp. 29. But Apple never explained how its combination would function or how a second LED would provide data communication without a base station.

Apple points to the Board's finding that a POSITA would have viewed "real-time display" as a desirable feature, but "that, in other cases, the benefits achieved

thereby can be outweighed by ***obviating the need*** for the wrist-worn sensor to include a special wireless communication circuit."  Resp. 30 (quoting Appx00034). But neither Apple nor the Board explained why a POSITA would add a base-station approach to "obviate the need" for communication functionality that ***already existed*** and thus was not "needed."  Apple cites *In re Urbanski*, 809 F.3d 1237, 1243 (Fed. Cir. 2016), but in that case, a second reference added the benefit of "improved sensory properties" not present in a first.

For this independent reason, this Court should reverse the Board's IPR1520/1521 obviousness conclusions.

## C.    The Board's Holding In IPR1520 That Dependent Claims 12 And 14 Are Obvious Lacks Substantial Evidence

Claims 12 and 14 of the '265 patent require that "the light permeable cover is configured to reduce a mean [i.e., average] path length of light traveling to the at least four detectors."  Appx00771.  Apple's expert originally opined these claims were satisfied because a convex surface concentrates light toward the center. Appx03068-03070 ¶¶118-120.  As discussed, the Board rejected that straightforward principle and adopted Apple's "greatest curvature" theory.  Br. 57.  But the Board identified no evidence explaining why claims 12 and 14 are satisfied under Apple's "greatest curvature" theory.  *Id*. 57-58.

Indeed, Apple attempted to avoid its admissions by claiming its expert merely illustrated a "representative example" of the path of a ***single*** light ray (Resp. 51):



**Apple's Illustrations of Light-Redirection (Appx01922)**

But claims 12 and 14 require that the convex lens "reduce a mean [i.e., ***average***] path length of light traveling to the at least four detectors." Appx00771. The path length of a ***single*** ray of light is not the same as the ***average*** path length of light traveling to the detectors. Apple points to its expert's deposition testimony that "***if*** [he] repeated this analysis for a multitude of path lengths, [he] would find that the ***majority*** of them would have a shorter path length." Resp. 51. But Apple's expert did not (1) "repeat" that purported "single ray" analysis, (2) explain the path of each ray, or (3) explain why a "majority" of rays would have a shorter path length, much less why that would result in a reduction of the average path length.[2]

Apple argues Masimo waived its challenge to claims 12 and 14 because Masimo "did not argue that claims 12 and 14 were separately patentable below ...." Resp. 50. But Masimo directly addressed Apple's expert testimony allegedly

---

[2] For example, 51% of light rays could have a slightly shorter path length, while 49% could have a much longer path length, such that the overall "mean" path length would not be reduced. A "majority" is not the same as an "average."

supporting the obviousness arguments for these claims. Appx02219-02220; Appx07324-07325. Under the Board's unexpected interpretation of Apple's expert testimony, Apple has ***no*** evidence supporting the invalidity of claims 12 and 14. Congress mandated that "the petitioner"—not the patent owner—"shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence." 35 U.S.C. § 316(e); 35 U.S.C. § 312(a)(3) (petition must identify "with particularity ... the evidence that supports the grounds for the challenge to each claim"). Here, Apple rejected its own petition evidence allegedly showing the obviousness of claims 12 and 14. Because "[e]ach claim" is "presumed valid," 35 U.S.C. § 282, and the burden to prove unpatentability never shifts to the patentee, *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015), the presumption remained unrebutted as to claims 12 and 14.

Apple cites *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316 (Fed. Cir. 2017), where the Court declined to consider an argument because the appellant's failure to make the argument deprived the Court of "the benefit of the Board's informed judgment," *id.* at 1329. Here, the Board explained its interpretation of Apple's expert testimony, finding Apple's expert analyzed "a ***single*** ray of light" rather than "the aggregate effect on all light that travels through the convex surface." Br. 58. If so, Apple's testimony does not show "the light permeable cover is configured to reduce a ***mean*** path length of light." Appx00771.

Applying waiver here would not serve judicial economy or promote fairness. Masimo could not have anticipated the Board would (1) ignore Apple's numerous factual admissions; (2) interpret Apple's expert testimony as to claims 12 and 14 as addressing only a "single ray" of light; and (3) permit Apple to rewrite its petitions. *See Syngenta Crop Prot., LLC v. Willowood, LLC,* 944 F.3d 1344, 1365 n.9 (Fed. Cir. 2019) (we "have the discretion to consider issues not raised below as justice may require"); *In re Qapsule Technologies, Inc.,* 759 Fed. Appx. 975, 979 (Fed. Cir. 2019) (declining to apply waiver where issue was "sufficiently developed in the record before us"); *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009) ("doctrine of waiver demands conscientiousness, not clairvoyance").

Accordingly, the Court should reverse at least the Board's IPR1520 decision invalidating claims 12 and 14 of the '265 patent as unsupported.

## D.    The Board Made Multiple Errors In IPR1537/1539/1715 That Require Reversal Or Remand

The Board in IPR1537/1539/1715 found a Inokawa would have motivated a POSITA to add a convex surface to Aizawa's sensor to (1) improve adhesion and (2) provide protection.  Br. at 62.  The Board's "adhesion" findings mirror those in IPR1520/1521 and are erroneous and lack substantial evidence for the same reasons. *See supra* Section II.A.5.

The Board's "protection" findings are erroneous because Apple admits Aizawa's sensor already includes protection in the form of a flat plate.  Resp. 55.

The Board identified no reason why a POSITA seeking to provide protection would have replaced Aizawa's flat plate with a convex shape. Br. 67-68; Appx03287 ¶[0106]; *see Kinetic Concepts,* 688 F.3d at 1369. Apple cites *Almirall, LLC v. Amneal Pharms. LLC*, 28 F.4th 265, 273-74 (Fed. Cir. 2022), which applied *KSR*'s guidance that "[w]hen there is a design need or market pressure to solve a ***problem*** and there are a finite number of identified, predictable ***solutions***, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." Here, Apple identifies no evidence a convex surface would "solve" any "protection" problems created by a flat plate. To the contrary, the record contains numerous reasons a convex surface would ***create*** problems, including scratching, slipping, and decreasing light collection.

The Court should thus reverse the Board's decisions in IPR1537/1539/1715.

**E.    The Board Also Erred In IPR1537/1539/1715 When Finding A POSITA Would Replace Aizawa's Wireless Transmitter With A Base Station Only To Add Back Wireless Transmission**

In IPR1537/1539/1715, the Board combined four references to address certain claims relating to wireless transmission. Appx00356; Appx00512; Appx00673. The Board found a POSITA would have (1) replaced Aizawa's ***wireless*** transmitter with Inokawa's base-station approach (which makes no sense for the reasons discussed above in Section II.B) and then (2) looked to Mendelson-2006 to reincorporate ***wireless*** data transmission. Br. 71-72. Apple's arguments merely restate the

Board's circular reasoning. Resp. 58-60. The Board's back-and-forth analysis, first removing and then restoring wireless functionality, is arbitrary and driven by hindsight. This Court should reverse.

## F. The Board Made Multiple Errors In IPR1536/1538/1714 That Require Reversal Or Remand

The Board found Ohsaki would have motivated a POSITA to add Ohsaki's protrusion to Mendelson-799's sensor to (1) improve adhesion and (2) provide protection. Appx00235; Appx00400; Appx00555. But the Board's findings are the result of multiple errors.

### 1. The Board Erred In Failing To Reconcile Its Decisions With Over A Dozen Warnings In Mendelson-799 Against Applying Pressure

As Masimo explained, Mendelson-799's repeated warnings against pressure would have dissuaded a POSITA from adding Ohsaki's protrusion to Mendelson-799's sensor. Br. 76-77. Yet, the Board *never* reconciled its decisions with Mendelson-799's more-than-a-dozen warnings against applying pressure. *Id*. That is error. *See Chemours*, 4 F.4th at 1376 (reversing where Board did not "adequately grapple" with why POSITA would have made modification given prior art's disclosure); *Polaris Indus. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1069 (Fed. Cir. 2018) ("a reference 'must [be] considered for all it taught'").

Apple argues the Board was not required to address "every argument raised by a party." Resp. 63. Apple cites *Novartis*, 853 F.3d 1316, but in that case, the

Court observed that the Board need not discuss "every negative and positive piece of evidence lurking in the record to evaluate a cursory argument." 853 F.3d at 1328. The evidence here was not "lurking in the record" or offered in support of a "cursory argument." Mendelson-799 warns against applying pressure over a ***dozen*** times. Br. 76-77. Moreover, Masimo's argument was not "cursory." Masimo argued this point in its briefs and at the hearing. *See, e.g.,* Appx12851-12854; Appx12974; Appx02501-02506; Appx02530; Appx02498.

Apple's expert agreed a POSITA reading Mendelson-799 would understand that variations in contact pressure could cause large errors in measurements by Mendelson-799's sensor. Appx05973-05974 227:21-228:3. Apple and its expert also acknowledged Ohsaki's convex surface would "physically dig[] into the skin" causing pressure. Appx02306; Appx00072 (Ohsaki's protrusion would "physically extend[] into the tissue and displac[e] the tissue."); Appx12477 ("regular pressure is applied to the user's wrist.'"); Appx02458 ("The soft skin relative to the hard sensor makes for an indentation, pressure and therefore stabilization."); Appx02458 ("the protrusion, it would lead to pressure"). The Board erred by failing to reconcile its decisions with Mendelson-799's many warnings against pressure. *See In re Lee*, 277 F.3d at 1342 ("[T]he agency tribunal must present a full and reasoned explanation of its decision."). A POSITA reading Mendelson-799 would not have

been motivated to add Ohsaki's protrusion and introduce the very pressure Mendelson-799 repeatedly warns against.

### 2.    The Board Also Erred In Failing To Identify A Structure That Would Eliminate Air Gaps

Mendelson-799 also warns against introducing air gaps between the sensor's surface and the skin.  Appx15586 2:58-64.  But Ohsaki discloses that its convex surface creates such air gaps.  Appx03353 Figs. 1-2.  A POSITA would have been dissuaded from creating air gaps by adding Ohsaki's convex surface to Mendelson-799's sensor.  Br. 73-74.

The Board dismissed this concern by finding a POSITA would have been capable of "eliminat[ing] any air gap" in the combinations.  Resp. 64-65.  But neither Apple nor the Board identified any combination that eliminates air gaps.  A patent challenger must identify a "clear evidence-supported account" of the contemplated combination.  *See Personal Web Techs., LLC v. Apple Inc.*, 848 F.3d 987, 994 (Fed. Cir. 2017).  If anything, a POSITA seeking to avoid air gaps would have retained Mendelson's flat surface.  Br. 74.  For this independent reason, the Board erred in finding a POSITA would have added Ohsaki's convex surface to Mendelson-799's sensor.

### 3.    The Board's "Protection" Motivation Lacks Substantial Evidence

Apple makes little effort to defend the Board's "protection" motivation.  Resp. 60-61.  Apple does not dispute that (1) Mendelson-799's inventor consistently used

a flat resin encapsulant; (2) a flat surface already provides protection; and (3) the prior art expressly teaches that a convex surface, unlike a flat surface, would be prone to scratches. Br. 77. Further, as discussed above, adding a convex surface to Mendelson-799's sensor would create pressure Mendelson-799 repeatedly warns against, create air gaps Mendelson-799 warns against, and direct light away from Mendelson-799's peripheral detectors, decreasing light collection. *Id*. 72-77.

The Board nonetheless found a POSITA would have been motivated to add a pressure-causing, air-gap introducing, and centrally-light-redirecting convex surface to Mendelson-799's sensor to provide protection. *Id*. But neither Apple nor the Board identified any "protection" advantage from a convex surface, as opposed to many other possible shapes, including the flat surface consistently used by Mendelson. *Id*. 77.

The Board relied on a conclusory sentence in Apple's expert's declaration stating that adding a protrusion would "provide additional protection." Appx00247; Appx00412; Appx00567. But Apple's expert never explained ***why*** a protrusion would provide additional or better protection than the flat resin encapsulant consistently used by Mendelson-799's inventor. Appx15283. Nor did Apple's expert explain why a POSITA would choose that shape despite the many drawbacks identified above. *See* Appx15283-15286.

Apple argues scratches would merely be one of "numerous tradeoffs" a POSITA would "consider."  Resp. 61.  But the Board never analyzed such "tradeoffs."  Appx00248.  Apple and its expert identified nothing about a convex surface that would provide additional or better protection than a flat surface.  Thus, there was no "protection" benefit against which to "tradeoff" the above drawbacks.

Accordingly, this Court should reverse or at least remand the Board's IPR1536/1538/1714 decisions.

## G.    The Board's Holding In IPR1538/1539/1714/1715 That Masimo's Claimed Protrusion Height Ranges Would Have Been Obvious Is Unsupported By Substantial Evidence

Apple fails to identify substantial evidence supporting the Board's decision that Masimo's specific claimed protrusion height ranges would have been obvious. Br. 69.  Apple does not dispute that the prior art discloses no specific protrusion heights.  Resp. 56-58.  Apple points to the Board's finding that Masimo's expert purportedly "did not dispute [Apple's expert's] position that there were a finite number of options available for the height of the convex surface." *Id*. 56-57.  But Masimo's expert never conceded that.  Apple's expert briefly referenced several prior-art ***housing*** lengths and widths and opined there was a "finite range of possible protruding heights."  Appx37119 ¶275; Appx50680-50681 ¶160.  Masimo's expert directly responded and explained that Apple's expert identified no ***protrusion*** heights at all.  Appx40397-40398 ¶124; Appx54845-54846 ¶124.

Apple's expert relied on Ohsaki, but testified he did not know Ohsaki's protrusion's shape.  Br. 69-70 (collecting cites).  Apple argues that its expert merely testified regarding Ohsaki's "protrusion's shape, which does not pertain to the particular protrusion *heights* that a POSITA would have found obvious."  Resp. 57 n.23.  But Apple's expert acknowledged he did not know Ohsaki's protrusion's shape or *dimensions*.  *See, e.g.,* Appx05876-05877 130:13-131:16 ("there's nothing that tells me anything in particular about the shape or *dimensions* of [Ohsaki's] cover"); Appx05851-05852 105:1-106:5 (Ohsaki "doesn't ever state dimensions, thicknesses, things like that").

Neither Apple nor the Board identified any purported "finite number" of protrusion heights, much less evidence of what those protrusion heights would be.  Br. 69-70.  This is not a case where a reference merely fails to disclose "dimensions that exactly meet the limitation," as in Apple's cited precedent.  Resp. 58 (citing *In re Warsaw*).  Apple cited no prior art disclosing *any* specific protrusion heights.  It was the inventors who discovered specific heights provide an order of magnitude increase in signal strength.  Appx00758 20:29-34.  The Court should reverse.

## H.   <u>The Board Erred In Finding A Reasonable Expectation Of Success</u>

Apple acknowledges the Board's "expectation of success" ruling relied on the Board's "greatest curvature" theory.  Resp. 66-67.  The Board's reliance on that theory was erroneous and unsupported for all the reasons discussed above.  Apple

argues Masimo "demand[s] a level of detail that is not required here." *Id*. 67. But no detail is required to understand that a POSITA would not expect a convex surface over peripheral detectors to result in a successful physiological sensor. Apple's own admissions establish that such a combination would direct light away from peripheral detectors. *See* Section II.A.2.

Moreover, the detail that Apple complains about is the detail Apple's own expert testified would be ***necessary*** to provide any optical analysis of the Board's combinations. Br. 55 (collecting cites). Masimo extensively cited and quoted such testimony in its opening brief, identifying numerous complex factors. *Id*. Apple responds that arriving at a combination "would have been within the level of skill in the art." Resp. 67. But this Court's precedent requires "a clear, evidence-supported account of the contemplated workings of the combination," which is a "prerequisite to adequately explaining and supporting a conclusion that a relevant skilled artisan would have ... reasonably expect[ed] success." *Personal Web*, 848 F.3d at 994. Apple identifies no such description in the record.

Apple argues the Board "properly rejected" Masimo's arguments because Masimo's "'265 patent fails to provide the detail Masimo demands from the prior art." Resp. 67. Apple points to the Board's statement that "the invention of ['265 patent] ***claim 1*** is recited at this same general level of utility and structure." *Id*. Apple cites *In re Epstein*, 32 F.3d 1559, 1568 (Fed. Cir. 1994), but in that case, the

Board rejected a patentee's argument that the prior-art contained insufficient detail to be enabling where the patentee's ***specification*** provided no such details.  Here, Masimo's shared specification contains more than sixty pages of figures and twenty pages of detailed disclosure.  Br. 14.  Apple's arguments never address that description.  The Board's reliance on the level of detail in a Masimo ***claim*** was erroneous: claims are not required to include all the details necessary to practice an invention.

Apple also identifies nothing in the Board's decisions reconciling (1) the Board's finding that Ohsaki's board would "simply be placed" over Mendelson-799's sensor, with (2) the Board's finding that "petitioner does ***not*** propose bodily incorporating the references…." *Id.* 77-78; *see BASF Corp. v. Enthone, Inc.*, 749 F. App'x 978, 985-86 (Fed. Cir. 2018) (nonprecedential) (vacating and remanding because of inconsistent findings).  Apple argues the Board merely recognized that Apple proposed incorporating "Ohsaki's ***teaching*** of a cover with a convex surface, not [Ohsaki's] precise cover and structure."  Resp. 70 (quoting Appx00234).  That misstates the record.  Apple repeatedly argued there would be predictability and a reasonable expectation of success ***because*** Ohsaki's board would "simply be placed" over Mendelson-799's sensor and thus function the same way.  *See e.g.,* Appx12476; Appx15285-15286.

Apple claims "Masimo does not dispute" a POSITA would have had a reasonable expectation of success "with respect to including multiple emitters" or "improving adhesion." Resp. 66. Apple is incorrect and misstates the relevant issue: whether a POSITA would have reasonably expected the Board's combinations to result in an effective physiological sensors, as claimed. Br. 53-54, 68, 77-79. Masimo directly addressed that issue in its opening brief. *Id.*

For this independent reason, this Court should reverse or at least remand all the Board's invalidity conclusions.

## I.    <u>Apple Agrees This Court Should Reverse The Board's Holding As To Certain Dependent Claims Of The '554 Patent</u>

Apple does not dispute the Court should reverse the Board's holding in IPR1539 that '554 patent claims 14-18 would have been obvious. Resp. 71-72.

## III.  <u>CONCLUSION</u>

The Court should reverse or at least remand the Board's decisions.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 9, 2022        /s/ Stephen W. Larson
                              Joseph R. Re, *Principal Counsel*
                              Stephen C. Jensen
                              Jarom D. Kesler
                              Stephen W. Larson
                              Jeremiah S. Helm

                              *Attorneys for Appellant*
                              *Masimo Corporation*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on November 9, 2022, the

foregoing **REPLY BRIEF OF APPELLANT MASIMO CORPORATION** was

filed using the Court's CM/ECF system, which will send notice of such filing to all

registered CM/ECF users.

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: November 9, 2022          */s/ Stephen W. Larson*

Joseph R. Re, *Principal Counsel*
Stephen C. Jensen
Jarom D. Kesler
Stephen W. Larson
Jeremiah S. Helm

*Attorneys for Appellant*
*Masimo Corporation*

# <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a).  This brief contains 6,952 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  November 9, 2022    /s/ Stephen W. Larson
                              Joseph R. Re, *Principal Counsel*
                              Stephen C. Jensen
                              Jarom D. Kesler
                              Stephen W. Larson
                              Jeremiah S. Helm

                              *Attorneys for Appellant*
                              *Masimo Corporation*

56463895